In re Celia STEINBERG, Debtor.

Kenneth Rowe and Linda
Rowe, Plaintiffs,

v.

Celia Steinberg, Defendant.

Bankruptcy No. 99–44414.
Adversary No. 99–4376.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Sept. 20, 2001.

Mark A. McConnell, Westland, MI, for plaintiffs.

Jason Bank, Bloomfield Hills, MI, for defendant.

### DECISION and ORDER

BURTON PERLMAN, Bankruptcy Judge.

This adversary proceeding arises in the Chapter 7 bankruptcy case of defendant/debtor Celia Steinberg. The complaint asserts claims under § 523(a)(2) and § 727(a) based upon an alleged failure to communicate to plaintiffs/purchasers a harmful condition in a residence sold by defendant and her husband to plaintiffs.

The proceeding came on for trial. At the conclusion of the trial, the court reserved decision. As a first step in our fact finding we incorporate in their entirety the facts stipulated by the parties in their Joint Final Pretrial Order:

1. That on or about November 28, 1995, Plaintiffs offered to purchase William and Celia Steinberg's condominium located at 46462 Arboretum, Plymouth, Michigan. The next day the Steinbergs accepted Plaintiffs' offer of Two Hundred Fifty–One Thousand Dollars ($251,000).

2. That the basement of the condominium had water in it three to four times between 1991 and September 1994, and two times between Sept. 1994 and the date of the sale to the plaintiffs.

3. That repairmen had been in the basement of the condominium in an attempt to repair the sump pump while Defendant resided there.

4. That in the prior lawsuit, Defendant alleged that the builder of the condominium had constructed a piping system under the basement floor which allowed the water from the well to enter the sump pump of the residence causing the sump pump to consistently run, and only provided a temporary cure to the flooding of the basement.

5. That the Defendant was aware that there was a problem with the sump pump due to a consistent loud noise that she complained of to her husband.

6. That the Defendant never made any effort in writing or otherwise to inform Plaintiffs that there was a artesian well or spring under the home.

7. The Plaintiffs did not have any conversations with the Defendant relating to any flooding problems in the basement with respect to flooding or water in the basement and the sump pump.

8. Defendant did not sign the Sellers' Disclosure Statement. Plaintiffs did not demand that Defendant sign the statement.

9. That the Defendant was involved in a previous lawsuit with the builder of the condominium and others over flood-

ing concerns resulting from improper construction of the residence in that the builder allowed the Artesian Well/Spring to drain into the basement's sump pump.

10. That Plaintiffs retained an inspector who inspected the real property, including the basement, prior to closing.

11. That prior to trial the Defendant and her husband settled the case with the builder for approximately $20,000.

12. That at the time Defendant filed for bankruptcy she was aware of the lawsuit initiated against her and her husband by the Plaintiffs herein that was pending in Wayne County Circuit Court.

13. John McArdle from Remerica acted as a dual agent for both Plaintiffs and Defendant and her husband in connection with the sale of this property.

We now continue with our findings of fact.

The residence purchased by plaintiffs from defendant and her husband William will hereafter be referred to "the subject residence." Plaintiffs purchased the subject residence from defendant and her husband William Steinberg in 1995. The Steinbergs had purchased it in 1991. During their occupancy, the Steinbergs had experienced a flooding problem in the basement which manifested itself as a loud noise akin to a flushing sound. The subject residence when purchased by the Steinbergs had a sump pump in the basement, the purpose of which was to remove excess water from the basement. When they experienced water problems in the basement, the Steinbergs consulted Daniel Hanson, an engineer, with respect to the problem. Plaintiffs called Hanson as an expert witness at the trial. Hanson examined the property in 1993 and found the problem to be a spring which was capped, and controlled by the sump pump. Hanson said that the problem could be dealt with by a first alternative of installing a French drain. Hanson also said there was a second alternative, installation of a generator so that the owners could be certain that the pump would operate even if the normal power source failed. Though defendant was present in the basement the first time that Hanson came to the subject residence in 1993, and she then expressed concern about the water noise, Hanson did not communicate to her his solutions to the problem. William Steinberg found the Hanson French drain solution to be too expensive, but he did have installed a generator as recommended by Hanson. He also had installed an additional pump as a backup for the sump pump. As part of the solution, William Steinberg had installed a dual float system and this stopped the noise problem. In addition, William Steinberg had an alarm system installed to give warning in the event that the pump stopped working. Thus, at the time that the Steinbergs sold the home to plaintiffs, there was in place in the basement of the home, a sump pump with a dual float system, a back-up pump, a generator, and an alarm system. This had managed any flooding problem during the tenure of the Steinbergs, and William Steinberg believed that the system he had in place dealt with any water problem. He had an office in the basement that he regularly used.

Plaintiffs wanted a two-bedroom house and originally walked away from purchasing the subject residence upon discovering that it had only one bedroom. After consulting a builder, however, they decided to buy the subject residence and build a second bedroom and bath in the basement. They then purchased the subject residence from the Steinbergs and went ahead with their construction plans.

Throughout their dealings with regard to the subject residence, plaintiffs dealt with William Steinberg, though on occasion

defendant was present. As required in Michigan, plaintiffs obtained a Sellers' Disclosure Statement in connection with their purchase of the subject residence. Under the heading "Property conditions, improvements & additional information" appears the following question:

1. Basement: Has there been any evidence of water? If yes, please explain.

In response, the "yes" box is checked, and written in is:

"From sump pump/Back up installed"

William Steinberg signed the Sellers' Disclosure Statement which was given to plaintiffs. Defendant did not.

At trial, defendant presented as Exhibit 3 an addendum to the purchase agreement dated November 3, 1995. The addendum gave plaintiffs a right to withdraw from the purchase agreement in the event that an inspection found a condition that was unacceptable. Such an inspection was conducted for plaintiffs within the time mandated by the addendum, but plaintiffs did not exercise their right to withdraw from the transaction. This was despite the fact that the inspection report fully disclosed what was in place in the basement for purposes of drainage. In addition, the inspection report said:

> We suggest that you obtain disclosure from the prior occupants regarding any history of water in the basement/crawl. We cannot certify the basement/crawl against future water infiltration.

Though the inspection report thus suggested that plaintiffs ask the Steinbergs about any flooding problems they may have had, plaintiffs did not do so. William Steinberg signed the addendum to the purchase agreement. Defendant did not.

■ The elements of a fraud dischargeability case in the Sixth Circuit are well established:

In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. *See Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993). In order to except a debt from discharge, a creditor must prove each of these elements by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Further, exceptions to discharge are to be strictly construed against the creditor. *See Manufacturer's Hanover Trust v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir. 1988).

*Rembert v. AT & T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998).

■ It is plaintiffs' position that defendant made a misrepresentation when she failed to disclose that there was a flow of water into the basement of the subject residence. Plaintiffs cite *In re Sprague*, 205 B.R. 851 (Bankr.N.D.Ohio 1997) in support of this proposition, and it is well established that silence, failure to disclose, can amount to misrepresentation. A condition to invocation of the doctrine, however, is that there be a duty to make disclosure. *In re Embrace Systems Corp.*, 178 B.R. 112, 124 (Bankr.W.D.Mich.1995).

■ Here, defendant testified that she did not know of the basement running water problem at the subject residence, and there is no contradictory evidence. Indeed, other evidence lends credence to her statement, for she did not deal with

the basement water problems; her husband did. She was concerned only because there was water noise in the basement, and that problem was cured. While she was present on the first occasion when the engineer Hanson came to the subject residence to look into the basement water problem, he testified that he did not communicate the results of his work to her.

In his opening statement at the trial, counsel for plaintiff asserted that the Joint Final Pretrial Order establishes that defendant had knowledge of the basement running water problem and she should have disclosed that knowledge to plaintiff. The court assumes that the basis for that assertion are fact stipulations 4 and 9. (See above.) These stipulations refer to a prior law suit in which defendant and her husband were plaintiffs. In that complaint, relief because of basement running water is alleged. In the absence of a legal characterization by plaintiff of this prior complaint allegation, this court takes the view that the prior allegation is to be viewed as a prior inconsistent statement by defendant. Such statements are admissible in evidence. FRE 801(d)(2). A prior inconsistent statement, however, while admissible in evidence, is not conclusive, but may be rebutted. *Fuller v. King*, 204 F.2d 586, 590 (6th Cir.1953). We hold that defendant's testimony at trial with the above-mentioned corroboration does rebut it. Reliance on the prior litigation is weakened as an admission because it is not shown that the prior allegation in question in fact represents a statement by defendant. Defendant was asked no questions at the trial about the prior pleadings, so the court is without information as to defendant's involvement with that pleading. It was established at the trial here that defendant's husband dealt with the basement water problem at the subject residence. Defendant did not. There is no evidence that she had actual knowledge of

the condition complained of, and the naming of defendant as a party plaintiff in the prior complaint may well have been a pro forma matter.

Because we find as a fact that defendant did not know of the basement running water problem at the subject residence, it cannot be said that she had a duty to disclose it to plaintiffs. There being no duty to disclose, her silence cannot be construed as a misrepresentation and the first element of the *Rembert* test is not met. Nor is the second, that there be an intent to deceive. There can be no intention to deceive where there is no misrepresentation. Furthermore, even if there was a duty to disclose, defendant is entitled to rely on the disclosure of a basement water problem in the Sellers' Disclosure Statement as fulfilling her obligation.

■■■■■ It is also our conclusion that plaintiffs have failed to prove justifiable reliance, an essential element of a fraud dischargeability case. In *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the U.S. Supreme Court interpreted the content of the term "fraud" in 11 U.S.C. § 523(a)(2), the statutory section with which we are dealing. Where the interpretation of the nature of reliance required in a fraud case under the Bankruptcy Code prior to the *Field* case was "reasonable reliance," the *Field* case changed that requirement to "justifiable reliance." This represented a lightening of the burden on plaintiff from the necessity of showing that his reliance was that of a reasonable person to merely being "justifiable." In explaining this view, the Supreme Court said:

The Restatement expounds upon justifiable reliance by explaining that a person is justified in relying on a representation of fact "although he might have

ascertained the falsity of the representation had he made an investigation."

*Field,* 516 U.S. at 69, 116 S.Ct. 437, *citing* Restatement (Second) of Torts (1976) at § 540.

The Court also stated the limitation of justifiable reliance:

> [i]t is only where, under the circumstances, the facts should be apparent to one of his [the plaintiff's] knowledge and intelligence from a cursory glance, *or he has discovered something which should serve as a warning that he is being deceived* that he is required to make an investigation of his own. (Emphasis added.)

*Field,* 516 U.S. at 71–72, 116 S.Ct. 437, *quoting* W. Prosser, Law of Torts, § 108, p. 718 (4th Ed.1971).

In the case before us, plaintiffs caused an inspection of the subject residence to be made. They were expressly advised to "obtain disclosure from the prior occupants regarding any history of water in the basement/crawl." They did not do so. Clearly, plaintiffs here were given a warning. That they failed to make inquiry disables them from claiming that they justifiably relied on defendant's silence when they bought the subject residence.

In view of the foregoing discussion, we find the issues in this proceeding in favor of defendant. The complaint is dismissed.

So Ordered.